Van Kleeck v Town of Walkill (2024 NY Slip Op 51417(U))

[*1]

Van Kleeck v Town of Walkill

2024 NY Slip Op 51417(U)

Decided on October 11, 2024

Supreme Court, Orange County

Williams, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 11, 2024
Supreme Court, Orange County

Patricia A. Van Kleeck, Administratrix, on, behalf of the 
 Estate of Christopher M. Van Kleeck, decedent; PATRICIA VAN KLEECK and BRIAN VAN KLEECK, Individually, Plaintiffs,

against
Town of Walkill, DANIEL GRAHAM, Defendants.

Index No. EF000928-2022

Plaintiff: Michael H. Sussman, Sussman & Goldman, 1 Railroad Ave., Suite 3, Goshen, NY 10924
Defendant: James Randazzo & Drew Sumner, Portale Randazzo LLP, 245 Main Street, Suite 340, White Plains, NY 10601

E. Loren Williams, J.

The following papers were read on defendants' motion for summary judgment:
Seq. #1
Notice of Motion/Affidavits/Exhibits NYSCEF Doc # 31-59
Opposition/Affidavits/Exhibits NYSCEF Doc # 62-65
Reply NYSCEF Doc # 68-69
BACKGROUND AND PROCEDURAL HISTORY
This case involves a Town of Walkill police officer, defendant Daniel Graham ("Graham"), shooting and killing decedent Christopher Van Kleeck in the course of responding to a report of an emotionally disturbed person. The action was commenced on December 16, 2022. Issue was joined on April 4, 2022. 
Plaintiff alleges negligence, wrongful death, battery, negligent infliction of emotional distress, and intentional infliction of emotional distress. This includes a claim for negligent hiring, supervision, and training against the defendant Town.
The following facts are generally undisputed, unless otherwise indicated, and are drawn from the evidence in the record and the parties' Statements of Material Facts. Though the parties submitted a voluminous record, the following is a brief summary of the facts relevant to the [*2]narrow issues before the Court. 
On June 12, 2021, Patricia Van Kleeck ("Patricia"), decedent's mother, called the Orange County Crisis Call Center (though intending to call Mobile Mental Health) for assistance with her son, who was decompensating from his mental illness. She wanted someone to come speak to her son. Decedent had a history of mental illness, and, it appears at the time of the shooting, was no longer on his psychiatric medication. While on the phone, the center representative heard decedent getting loud and angry about the fact that Patricia was calling the Center. At one point, decedent himself spoke with the representative, explained the parties had a dispute, but that now everyone was calm and safe. The parties ended the call.
Later that day (at approximately 3:25 PM), Patricia called the Center again, requesting Mobile Mental Health to come speak to her son. Decedent spoke with the representative again, explaining that he had thrown a tantrum because "his father wanted to fight me and called me outside," but again reassured the representative that everyone is safe and nothing was going to happen. He strongly expressed that he did not want the police to come, though appeared open to someone from Mobile Mental Health coming to speak to him. He indicated that if the police did come, it would be "game over for them, for you, and as many cops as I can take out. I don't give a fuck if this is a threat." 
Following this last call, decedent and his parents were uneventfully standing in their front yard for between twenty to thirty minutes. Patricia admitted in her testimony that her son did nothing threatening to anyone during that time, though felt more comfortable outside so she could have some distance from him.
Unbeknownst to the decedent and his family, the Center reported the calls to the Walkill Police Department (the "Town") who dispatched officers Graham and Michael Rinaldo to head to the scene. The Town had previous interactions with decedent and the Department's computer system reflected that multiple officers were to be dispatched for any calls for service at decedent's residence. It is disputed, however, whether defendant Graham knew about this notation. The dispatcher did tell Graham about decedent's threat to "take out" officers if any arrived. The Walkill dispatcher also reached out to New York State Police and the County Sheriff's Office, indicated decedent had "hurt members before," dispatches that Graham heard on the radio.
Graham had activated lights and sirens on portions of the drive, though claims he turned them off as he approached. According to the dashcam video, he issued a burst of siren noise as he passed through the nearby intersection. Decedent's father heard the siren approximately 30 seconds before the police arrived.
At this point in the events, the record becomes less clear and the disputed accounts more varied. Thankfully, video from both the police vehicle dash cam and a nearby security system recorded the events. As Graham's police vehicle approached the residence, all three Van Kleecks were standing in front of the house, at which time both decedent's father Brian Van Kleeck and decedent began running towards the police car. The parties dispute the nature of this running and whether decedent was wielding one knife (or two knives) and the manner in which he was holding them. It is, however, indisputable that two knives were found with decedent's body. 
The video footage next reflects that as Graham came to a stop, decedent continued to run in the direction of the police car while Brian ran behind a trailer; decedent was not following Brian to the trailer but rather heading into the roadway in front of the police vehicle. [*3]Approximately three to four seconds later, with the police car just coming to a stop, the video shows Patricia appear first in the yard, and then decedent runs in front of Graham's vehicle. Though Graham believed he was coming at him in his locked police car, the video is inconclusive. Graham began shooting at decedent as soon as he was in front of the vehicle and in the roadway, before any destination or intent could be conclusively divined. Though Graham claims he saw decedent wielding knives in a threatening, overhead manner towards his father, this is also inconclusive from the video evidence and disputed by plaintiffs.[FN1]
It is also dubious that Graham would be able to observe all these events from within a moving police vehicle, with a trailer obstructing his view partially, all within just a matter of seconds, even if the video did not dispute portions of his story. The video could also support a narrative where decedent was attempting to flee the scene, and police apprehension, by running across the road; unfortunately we will never know. Decedent is unable to offer his version of events. 
As decedent began running in front of the police car, Graham opened fire, firing three rounds, with the last round striking decedent in the head. The rounds were fired through the vehicle windshield while Graham was still inside the locked vehicle. The shots were fired with no prior warning to decedent that he would be shot if he continued on his present course or any display of authority. 
Defendants argue they are entitled to summary judgment, as defendant Graham's conduct was justified and reasonable under the circumstances, thus rendering him not liable for wrongful death, battery, or negligence. Graham contends he was acting to protect decedent's father from imminent harm and he felt he was also under imminent threat from decedent, as decedent was wielding knives. Graham suggests he is entitled to qualified and governmental immunity for discretionary acts, use of professional judgment, and because his actions were objectively reasonable. As to the Town, defendants argue it cannot be held liable for negligent hiring, training, or supervision as Graham was clearly acting within the scope of his employment. The Town further contends that, in the absence of any underlying tortious conduct by Graham, it cannot be held liable. It further cannot be held liable for punitive damages under New York law.
In opposition, plaintiffs point to numerous factual disputes that prevent summary judgment, including principally the reasonableness of Graham's actions and whether a reasonable jury could find that Graham was not under an imminent threat to justify the shooting. Plaintiffs contend that the Attorney General's decision not to prosecute Graham under a criminal standard has no bearing on the merits of a civil claim. Plaintiffs posit that the failure to follow a municipal policy, such as here the use of force policy, defeats any claim for governmental immunity. Plaintiffs quote the Department's own use of force policy that prohibits the use of lethal force where a "fleeing felon presents no threat of imminent death or physical injury to another person present." Plaintiffs suggest that Graham failed to follow the policy. Similarly, plaintiffs say that Graham is not entitled to qualified immunity for intentionally shooting someone who did not pose an imminent risk of death or physical injury to anyone. Finally, plaintiffs suggest the jury may award punitive damages against Graham. 
In reply, defendants generally repeat their contentions made in the initial motion and suggest the admissible evidence supports the objective reasonableness of Graham's decision to [*4]shoot decedent, and his concomitant adherence to Walkill Police Department policies. 
To the extent any specific arguments made by the parties was not explicitly referenced in the summary above, does not mean the Court has not reviewed and considered all arguments. 
DISCUSSION
A proponent of a motion for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law with proof in admissible form sufficient to establish the lack of any material issues of fact (see Alvarez v Prospect Hospital, 68 NY2d 320, 324 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). Once a showing of entitlement to summary judgment has been made, the burden shifts to the party opposing the motion for summary judgment, to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action (see CPLR 3212 [b]; Alvarez v Prospect Hospital, supra; Zuckerman v City of New York, supra).
"'[A]n officer's decision to use deadly force is objectively reasonable only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others'" (Owens v City of New York, 183 AD3d 903, 907 [2d Dept 2020] (quoting Williams v. City of New York, 129 AD3d 1066, 1067 [2d Dept 2015])). "Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly [physical] force" (id. (quoting Tennessee v Garner, 471 US 1, 11 [1985])). 
Simply having a knife, being a mentally ill person, or having had prior negative interactions with the police, does not mean that person can be freely shot by the police, as a matter of law. In all but the rarest examples, cases such as this inevitably feature intractable issues of fact. Indeed, it is rare to find a decision in either the federal courts or the state courts granting summary judgment in excessive force cases, let alone fatal police shootings where the perpetrator could be considered as actively fleeing the scene. One need only watch the video and read the conflicting accounts to see that. Though Graham claims he was under imminent threat himself, he was within a locked police vehicle with backup on the way, and fired through a windshield at decedent before decedent's intent was apparent. The video also does not support that, at the time the fatal shots were fired, decedent was a threat to anyone else. He was running in a totally different direction than his father, who by then was behind a trailer and well out of harm's way. This is clearly an issue for the jury to consider and review. Perhaps they will credit the officer's version of events and find him in the right. But perhaps they will see the video in some different light, and fault the officer for a shooting that did not need to occur under the circumstances presented. Indeed, the jury could find the officer's decision to fire haphazardly out of his windshield, in the direction of oncoming traffic on a busy road, a dense residential area, and decedent's mother, was not a reasonable decision under these circumstances. It is not the Court's role to decide this question as a matter of law. 
As to the remaining immunity arguments, these cannot be considered in light of the factual disputes regarding the reasonableness of Graham's decision and his compliance with departmental policies. The "immunity afforded a municipality for its employee's discretionary conduct does not extend to situations where the employee, a police officer, violates acceptable police practice" (Newsome v County of Suffolk, 109 AD3d 802, 803 [2d Dept 2013] (quoting Lubecki v. City of New York, 304 AD2d 224, 233—234 [1st Dept 2003])). If the jury finds that [*5]Graham was not justified in shooting decedent, then he will be in violation of both clearly established constitutional law and in violation of the Department's own policies and procedures on use of deadly force, defeating any immunity defenses (see Owens, 183 AD3d at 906). 
Plaintiff does not appear to oppose the portion of defendants' motion that seeks dismissal of any claims against the Town for negligent hiring, supervision, training, etc., on the basis that Graham was clearly acting within the scope of his employment. Though not clearly alleged as a cause of action, to the extent plaintiff was attempting to bring such a claim, defendant is correct that it cannot be sustained and, in any event, was unopposed. "Generally, where an employee is acting within the scope of his or her employment, the employer is liable for the employee's negligence under a theory of respondeat superior and no claim may proceed against the employer for negligent hiring, retention, supervision or training" (Quiroz v Zottola, 96 AD3d 1035, 1037 [2d Dept 2012]). For this reason, however, the plaintiff may still maintain claims against the Town under a respondeat superior theory, as there are issues of fact that prevent summary dismissal. 
Though punitive damages cannot be maintained against a municipality in New York, (see Hanson v Hicksville Union Free School Dist., 209 AD3d 629, 631 [2d Dept 2022]), they may be maintained against an individual police officer (see D'Elia v 58-35 Utopia Parkway Corp., 43 AD3d 976, 979 [2d Dept 2007]). Given the issues of fact regarding Graham's actions, if the jury finds he was not justified in shooting decedent, punitive damages may be warranted.
The parties remaining contentions were considered and are denied as either moot, academic, or because they do not alter the Court's decision.
Accordingly, it is:
ORDERED that defendants' motion for summary judgment is GRANTED IN PART with respect to any claims for negligent training, supervision and/or hiring, and DENIED in all other respects; and it is further
ORDERED that the parties shall appear for a conference on November 19, 2024, at 9:30 A.M. to set this matter down for trial.
The foregoing constitutes the Decision and Order of the Court.
Dated: October 11, 2024
E N T E R:
HON. E. Loren Williams, J.S.C.

Footnotes

Footnote 1: The Court generally credits the video as the best representation of the events, as the parties' conflicting testimony do not appear consistent with the video in many places.